Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
March 4, 2019

**2019 CO 15**

**No. 16SC584, *People v. Travis* — Sixth Amendment — Counsel of Choice — Motion to Continue — Abuse of Discretion.**

The People challenge the decision of a division of the court of appeals that concluded that Travis's request to "look for and pay for a lawyer" was an invocation of her Sixth Amendment right to be represented by counsel of her choice.  The supreme court holds that Travis's request did not implicate her Sixth Amendment right to counsel of her choice and that the trial court's decision to deny Travis's request to continue her trial to "look for and pay for a lawyer" was not an abuse of discretion.  Accordingly, the supreme court reverses the division's decision and remands for proceedings consistent with this opinion.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

### 2019 CO 15

**Supreme Court Case No. 16SC584**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 13CA1431

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

April Rose Travis.

**Judgment Reversed**
*en banc*
March 4, 2019

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Kevin E. McReynolds, Assistant Attorney General
*Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Public Defender
Kamela Maktabi, Deputy Public Defender
*Denver, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.

¶1 On the day her trial was set to begin, April Travis told the court that she was hoping she could have more time "to look for and pay for an attorney." The trial court denied the request to continue the case, noting that the trial had previously been continued and Travis was already being represented by a public defender. Travis appealed that decision, arguing that her request to look for a lawyer was an invocation of her Sixth Amendment right to be represented by counsel of her choice. A division of the court of appeals agreed, concluding that because Travis had invoked that right, the trial court was required to make a record that it had reviewed each of the factors elaborated in our decision in *People v. Brown*, 2014 CO 25, 322 P.3d 214.

¶2 The right to be represented by counsel of the defendant's choosing is not implicated by a bare request to "look for and pay for" a new lawyer. The trial court was therefore not obligated to review the *Brown* factors, and its decision to deny Travis's trial-day continuance request was not an abuse of discretion. Accordingly, we reverse the decision of the court of appeals and remand for proceedings consistent with this opinion.

## I. Facts and Procedural History

¶3 On November 20, 2011, Travis and her roommate, a disabled woman for whom Travis was acting as a caregiver, got into a fight. Travis punched her roommate in the face, hit her with a mop handle multiple times, tore out clumps of her hair, and stabbed her in the arm with a kitchen knife. Travis was charged with two counts of assault in the second degree and felony menacing.

2

¶4      On January 19, 2012, the public defender filed an entry of appearance. On June 4, 2012, Travis entered a not guilty plea as to all charges, and the court set Travis's case for trial on November 26, 2012. Prior to the November 2012 trial date, Travis requested a continuance so that she could investigate what she described as issues regarding the victim's character. The People objected to this request for a continuance, but the trial court found good cause and continued the jury trial. The case was reset for trial on April 15, 2013.

¶5      At the pretrial conference, which was held five days before the rescheduled trial, Travis's counsel explained to the court that they had been unsuccessful in their attempts to serve the witness who was the basis for Travis's previous motion to continue. The witness was not an eyewitness to the events that formed the basis for the charges, but would, apparently, have spoken to the victim's character and credibility. The trial court told Travis that even if she was unable to secure this witness for trial, he would not grant an additional continuance.

¶6      On the morning of trial, Travis made the following request: "My request was that I was going to look for and pay for an attorney. I don't feel this case is fair regarding [the victim]. There's a lot of stuff that needs to come out about her. I don't think it's fair to me." The court then stated:

> Well, Ms. Travis, I understand that. This case has been pending for a very long time. You have had plenty of time to decide if you were wanting to hire counsel. [Your public defenders] are extremely experienced and careful attorneys. They have filed all of the appropriate motions. They have worked very hard on your case.

3

There are rulings that the Court makes that are the Court's responsibility. [Your public defenders] filed motions and made requests, some of which I granted and some of which I denied. Regardless of who the attorney is standing in front of me, I make legal decisions. I don't base them on personalities.

The Court is not going to continue this case. If you are dissatisfied with their representation because you think that they are not adequately representing you and you wish to proceed to trial on your own today, I can advise you and you can do that.

It is not something that I advise anybody who is faced, certainly not with a felony that carries a mandatory prison sentence, to do. It is always a person's right. I can advise someone of that right but having presided over this case for as long as I have, I know how hard [your public defenders] have been working on your behalf.

There's nothing apparent to me that would indicate that they're providing you with inadequate or ineffective assistance of counsel.

. . .

If you want to make a record, Ms. Travis, that's up to you.
. . . Are there other things you wanted to present to me today?

Travis responded, "No." The court next asked whether Travis wanted to proceed with her appointed counsel, to which Travis responded, "Yes." The case then proceeded to trial, and the jury convicted Travis.

¶7    On appeal, Travis argued that her statement that she wanted "to look for and pay for" an attorney was an invocation of her Sixth Amendment right to counsel of her choice. The court of appeals agreed, concluding that our decision in *Brown* required the trial court to make a record that it had reviewed the eleven factors set out in that decision even when

4

there is no suggestion that new counsel has been identified or retained. We granted the

People's petition for certiorari.[1]

## II. Applicable Law

¶8     The Sixth Amendment to the United States Constitution has long been interpreted

to afford a criminal defendant the right to be represented by counsel of his or her choice.

U.S. Const. amend. VI. We recently recognized that the "right to hire counsel of choice

includes the right to fire that counsel." *Ronquillo v. People*, 2017 CO 99, ¶ 4, 404 P.3d 264,

266. This right, however, is not absolute. It does not, for example, "extend to a defendant

who requires counsel to be appointed for him." *Id.* at ¶ 18, 404 P.3d at 268. Indigent

defendants have a right to effective assistance of counsel, but not to counsel of their

choice. *Id.* Further, there are times when "judicial efficiency or 'the public's interest in

maintaining the integrity of the judicial process,' may be deemed more important than

---

[1] We granted certiorari to review the following issues:

1. Whether the eleven-factor balancing test in *People v. Brown*, 2014 CO 25, 322 P.3d 214, applies when a defendant does not invoke her right to counsel of choice, but rather requests additional time only to decide whether to look for replacement counsel and possibly invoke her right to counsel of choice.

2. If *People v. Brown*, 2014 CO 25, 322 P.3d 214, applies in this case, whether reversal is required only if the defendant can show prejudice and that the prejudice could have been cured by a continuance.

3. Whether the court of appeals erred in concluding that any error in denying the continuance cannot be harmless.

the defendant's interest in being represented by a particular attorney." *Brown*, ¶ 17, 322 P.3d at 219 (quoting *Rodriguez v. Dist. Court*, 719 P.2d 699, 706 (Colo. 1986)).

¶9 In *Brown*, we considered how a defendant's right to be represented by the counsel of his choice should be balanced against the public's interest in the fairness and efficiency of the judicial system when a defendant asks for a continuance to allow a newly retained lawyer to prepare to represent him at trial. Brown had retained a private attorney who entered an appearance, filed a written motion for continuance, and appeared in court with Brown several days before the trial was set to begin to argue that he needed additional time to prepare. The court denied the requested continuance. We held that when a defendant appears in court, even on the eve of trial, and asks for a continuance to allow newly retained counsel to prepare, the trial court must conduct a multi-factor balancing test to determine whether to grant the continuance. *See id.* at ¶ 24, 322 P.3d at 221.

¶10 The *Brown* "counsel of choice" factors are: (1) the defendant's actions surrounding the request and apparent motive for making the request; (2) the availability of chosen counsel; (3) the length of continuance necessary to accommodate chosen counsel; (4) the potential prejudice of a delay to the prosecution beyond mere inconvenience; (5) the inconvenience to witnesses; (6) the age of the case, both in the judicial system and from the date of the offense; (7) the number of continuances already granted in the case; (8) the timing of the request to continue; (9) the impact of the continuance on the court's docket; (10) the victim's position, if the Victims' Rights Act applies; and (11) any other case-specific factors necessitating or weighing against further delay. *Id.*

6

¶11    A few years later, we held in *Ronquillo* that "the right to counsel of choice includes the right to fire retained counsel" and to do so without a showing of good cause. ¶ 27, 404 P.3d at 269–70. In that case, Ronquillo had been represented by retained counsel, but the lawyer-client relationship had broken down to such an extent that Ronquillo wanted to fire his attorney and seek representation from the public defender. The trial court found that Ronquillo could only seek a continuance to fire his attorney and seek public representation if he could demonstrate "good cause" for the firing. We held that the right to retain counsel of choice encompasses a right to fire that attorney without any showing of good cause. If a defendant desires to terminate his chosen counsel and seek appointed counsel, we concluded that "the court should determine whether the defendant is entitled to a continuance under the test we set out in *Brown*." *Id.* at ¶ 35, 404 P.3d at 270.

¶12    Trial courts have broad discretion in deciding whether to grant or deny a continuance. In *Brown* and *Ronquillo*, we explained that a trial court making that decision when the Sixth Amendment right to counsel of choice is at issue must demonstrate that it weighed the full range of factors that might affect its exercise of discretion. When the right to counsel of choice is not at issue, the specific findings set forth in *Brown* are not required. Instead, a reviewing court will look at the "total circumstances manifested by the record in [the] case" and "'particularly [at] the reasons presented to the trial judge at the time the request [was] denied.'" *People v. Hampton*, 758 P.2d 1344, 1353–54 (Colo. 1988) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). A trial court's decision to grant or deny a continuance will only be disturbed on appeal if the decision was "manifestly

7

arbitrary, unreasonable, or unfair." *People v. Crow*, 789 P.2d 1104, 1106 (Colo. 1990); *see also Brown*, ¶ 19, 322 P.3d at 219.

## III. Analysis

¶13 This case presents a different factual situation than either *Brown* or *Ronquillo*, and the factual differences are dispositive. When Travis informed the court on the morning of trial that she wanted a continuance so that she could "look for and pay for an attorney," she did not trigger the assessment required by *Brown*.

¶14 While we decline to limit *Brown* to its precise circumstances—where a lawyer had entered an appearance, filed a motion for continuance, and appeared before the trial court—we can certainly say that *Brown* does not apply where, as here, the defendant expresses a general interest in retaining counsel, but has not identified replacement counsel or taken any steps to retain any particular lawyer.

¶15 The inapplicability of *Brown* to this circumstance can be demonstrated by the fact that at least two of the *Brown* factors—availability of chosen counsel and amount of time needed for that counsel to prepare for trial—cannot even be speculated about in this instance. True, in *Ronquillo* we observed that, in the absence of a specifically identified new counsel, the district court could still conduct the analysis required by *Brown*, drawing "on its own experience to make assumptions about when counsel will likely be available and how long counsel will likely need to prepare." *Ronquillo*, ¶ 36, 404 P.3d at 271. In that case, however, Ronquillo sought to proceed with appointed counsel and his eligibility to be represented by appointed counsel was uncontested. Thus, while the precise identity of the court-appointed counsel who would take on his case was not

known, the fact that he would be represented by appointed counsel was known.[2] The circumstances here are far more uncertain and would require an unrealistic level of speculation by the trial court. Travis's vague request to "look for and pay for an attorney" did not identify any such lawyer or even demonstrate her ability to retain that lawyer.

¶16 Because the specific on-the-record findings required by *Brown* are not required in the circumstances presented here, the trial court's decision to deny the continuance should be reviewed to determine whether the decision was "a clear abuse of discretion." *Crow*, 789 P.2d at 1106. In denying Travis's requested continuance, the trial court considered the fact that the case had already been continued once before as well as the fact that the case had been pending "for a very long time." The court also noted that Travis's request to continue her case seemed to be based upon her disappointment with the court's evidentiary rulings. The court assured Travis that these rulings were made not based upon the identity of her attorney but rather upon the law. And the court informed Travis that she had a right to represent herself if she no longer wanted to be represented by her public defenders. *See Ronquillo*, ¶ 38, 404 P.3d at 271. Nothing in the trial court's consideration of the circumstances here reflects an abuse of discretion.

## IV. Conclusion

¶17 Because the right to be represented by counsel of the defendant's choosing is not implicated by a vague request to "look for and pay for an attorney" and because the trial

---

[2] And, recall, a defendant who receives court-appointed counsel is not entitled to choose specifically who that counsel will be. *See Ronquillo*, ¶ 18, 404 P.3d at 268.

court's decision to deny Travis's trial-day continuance request was not an abuse of discretion, we reverse the decision of the court of appeals.