23CA0407 Peo v Benhmida 09-25-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0407
Arapahoe County District Court No. 15CR1270
Honorable Ryan J. Stewart, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Nicholas Nabill Benhmida,

Defendant-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE SCHUTZ
Grove, J., concurs
J. Jones, J., specially concurs

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 25, 2025

---

Philip J. Weiser, Attorney General, Claire V. Collins, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

R. Scott Reisch, Alternate Defense Counsel, Robert F. LeVeen, Alternate
Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Nicholas Nabill Benhmida, appeals the postconviction court's order denying his Crim. P. 35 motion without a hearing. We affirm.

## I.    Background and Procedural History

### A.    Crime, Plea Terms, and Sentence

¶ 2    In May 2015, Benhmida, who was indigent and unhoused, visited his mother and stepfather in Arapahoe County. Benhmida and his stepfather started arguing, which culminated with Benhmida fatally shooting him. Benhmida fled the home and drove to a local animal hospital in Jefferson County where he held two employees at gunpoint and demanded that they give him animal euthanasia drugs. Police arrested him shortly after he left the animal hospital. Benhmida was initially charged with first degree murder, aggravated robbery of a controlled substance, menacing, two counts of false imprisonment, and two crime of violence sentence enhancers.

¶ 3    The court set the matter for a jury trial; however, in July 2016, Benhmida pleaded guilty to added counts of second degree murder and aggravated robbery, in exchange for dismissal of the remaining counts. In accordance with the plea agreement, the court

1

sentenced Benhmida to twenty-five years in the custody of the Department of Corrections.

### B.    Postconviction Appeal

¶ 4    In 2022 — six years after he entered the plea — Benhmida filed a pro se motion, purportedly under Crim. P. 35(a), in which he asserted claims that (1) he received ineffective assistance of plea counsel; (2) the court improperly held him without bond which resulted in a violation of his Sixth Amendment right to counsel of his choice; (3) the prosecution engaged in misconduct; (4) his mental health struggles impacted the validity of his plea; (5) venue was improper; and (6) the court lacked subject matter jurisdiction.[1]

---

[1] Benhmida challenged the Arapahoe County district court's jurisdiction because some of the criminal actions occurred in Jefferson County.  The postconviction court denied his claim because every district court is a court of general jurisdiction authorized to preside over cases involving crimes committed wholly or partially within Colorado's boundaries, and Benhmida admitted to crimes committed in Arapahoe County, thereby admitting to the factual basis of the court's jurisdiction and venue.  *See* § 18-1-201(1)(a), C.R.S. 2025 ("A person is subject to prosecution in this state for an offense which he commits . . .  either wholly or partly within the state . . . ."); *People v. Gardner*, 250 P.3d 1262, 1271 (Colo. App. 2010) (guilty plea established factual basis for court's jurisdiction).

¶ 5      Benhmida seemingly recognized that his motion was filed beyond the three-year deadline applicable to Crim. P. 35(c) motions. *See* § 16-5-402(1), C.R.S. 2025 (three-year deadline for filing a Crim. P. 35(c) motion arising out of non-class 1 felonies). In an apparent effort to avoid the time bar, Benhmida brought his motion under Crim. P. 35(a), which allows a defendant to challenge an illegal sentence at any time. Alternatively, Benhmida argued that his tardy filing was the product of excusable neglect or justifiable excuse attributable to his mental health struggles, lack of legal knowledge, counsel's advice when he accepted the plea agreement that he could not "appeal or change" his sentence, and inability to hire an attorney. *See* § 16-5-402(2)(d) (a court may accept a tardy filing when "the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect").

¶ 6      The postconviction court treated Benhmida's motion as one filed under Crim. P. 35(c) and summarily denied it after finding that his substantive claims failed on the merits and were untimely. Benhmida appeals this order.

## II.    Right to Counsel Claim

¶ 7    On appeal, Benhmida raises only one substantive claim: the postconviction court erred by failing to address his contention that he was denied counsel of his choice.  Although Benhmida makes several other arguments — again trying to justify his late filing as the product of justifiable excuse or excusable neglect — we need not address those arguments unless we determine that his lone substantive claim is meritorious.

### A.    Applicable Law

#### 1.    Abandoned Claims

¶ 8    At the outset, we note that Benhmida failed to appeal the summary denial of the other substantive claims asserted in his motion; therefore, those claims are deemed abandoned and we do not address them further.  *See People v. Ortega*, 266 P.3d 424, 428 (Colo. App. 2011) (explaining that contentions from a postconviction motion that are not pursued on appeal are deemed abandoned).

#### 2.    Standard of Review and Preservation

¶ 9    We review the summary denial of a postconviction motion de novo.  *People v. Duran*, 2015 COA 141, ¶ 10.  The People argue that Benhmida did not adequately preserve his counsel of choice claim

4

because he failed to raise it before the district court.  *See Martinez v. People*, 2015 CO 16, ¶ 14 (To preserve an issue for appeal, "a party must present the trial court with 'an adequate opportunity to make findings of fact and conclusions of law' on the issue." (quoting *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004))).

¶ 10    Benhmida contends that he adequately raised the claim, pointing to the following allegation from his motion: "I believe there was no way this was a capital case, bond was constitutionally required.  Denial hindered my right to a fair trial as I could not get my affairs in order or liquidate my assets and secure better representation."

¶ 11    We acknowledge that Benhmida represented himself in the postconviction court, and that he arguably alleged he was denied the right to counsel of his choice.  *See People v. Bergerud*, 223 P.3d 686, 696-97 (Colo. 2010) (we generally disfavor declining to review a constitutional claim because of a petitioner's "inability to articulate [their] concerns within the legal lexicon").  On the other hand, as the People note, this allegation was mixed in with allegations of wrongful denial of bail and prosecutorial misconduct, none of which were fully developed.  Nevertheless, even if we assume — without

deciding — that Benhmida preserved the counsel of choice argument, we conclude it fails for other reasons.

### 3. Crim. P. 35(a) and 35(c)

¶ 12    A postconviction motion's substance controls whether it is a Crim. P. 35(a) or 35(c) motion. *People v. Collier*, 151 P.3d 668, 670 (Colo. App. 2006). Under Crim. P. 35(a), a court

> "may correct a sentence that was not authorized by law or that was imposed without jurisdiction at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence." A sentence is "not authorized by law" if it is inconsistent with the statutory scheme outlined by the legislature.

*Collier*, 151 P.3d at 670 (quoting Crim. P. 35(a)).

¶ 13    In contrast, a Crim. P. 35(c) motion is the proper vehicle to challenge a conviction "obtained or sentence imposed in violation of the Constitution or laws of the United States or the constitution or laws of this state" or on "[a]ny grounds otherwise properly the basis for collateral attack upon a criminal judgment." Crim. P. 35(c)(2)(I), (VI).

¶ 14    Benhmida's postconviction motion did not assert that his sentence is inconsistent with the statutory scheme, so the

6

postconviction court correctly treated the motion as one brought under Crim. P. 35(c). Neither party challenges that conclusion on appeal, so we do not address it further.

¶ 15 A postconviction court may deny a Crim. P. 35(c) motion without a hearing if (1) "the motion, files, and record in the case clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief," *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003); (2) "the claims raise only an issue of law, or . . . the allegations, even if true, do not provide a basis for relief," *People v. Venzor*, 121 P.3d 260, 262 (Colo. App. 2005); or (3) the allegations are "merely conclusory, vague, or lacking in detail," *People v. Osorio*, 170 P.3d 796, 799 (Colo. App. 2007). A defendant need not provide evidentiary support for the allegations in his postconviction motion but must assert facts that, if true, could provide a basis for relief. *White v. Denv. Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988).

### 4. The Sixth Amendment Right to Counsel of Choice

¶ 16 The United States and Colorado Constitutions afford a criminal defendant the right to be represented by counsel of their choice in state criminal prosecutions if the defendant faces

incarceration. *Ronquillo v. People*, 2017 CO 99, ¶ 15 (citing *Gideon v. Wainwright*, 372 U.S. 335, 342 (1963)); *see* U.S. Const. amend. VI; Colo. Const. art. II, § 16. The right to counsel of choice applies whenever a defendant seeks to hire private counsel. *Ronquillo*, ¶ 20.

¶ 17    The right to be represented by counsel of a defendant's choosing is not implicated by "vague request[s] to 'look for and pay for an attorney.'" *People v. Travis*, 2019 CO 15, ¶ 17. Rather, the defendant may invoke the right to counsel of choice when the retention of counsel is "substantially definite, in name and in funds." *People v. Sifuentes*, 2019 COA 106, ¶ 12.

¶ 18    To establish a viable claim for denial of the right to counsel of choice, a defendant must show the following:

- They had the means to hire counsel or that there was non-court-appointed counsel "willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)).

8

- The court's action directly or indirectly denied the defendant their counsel of choice. *United States v. Alcorta*, No. 20-3198, 2023 WL 3835789, at \*7 (10th Cir. 2023).

- The court's denial of their chosen counsel was not justified by legitimate considerations such as conflicts of interest, fairness, ethical violations, or the court's need to manage its docket. *Gonzalez-Lopez*, 548 U.S. at 151-52.

## B.    Analysis

In his motion, Benhmida alleged that the court violated his Sixth Amendment right to counsel by holding him without bond because, as a consequence of being denied bail, he could not "get [his] affairs in order or liquidate [his] assets and secure better representation." On appeal, he contends that the postconviction court erred by failing to address his counsel of choice claim because "[n]othing in the record clearly establishes [that he] could not have secured the resources to hire private counsel nor that he could have secured counsel of choice despite his no-bond hold." Thus, Benhmida urges us to reverse the court's order and "direct the [postconviction] court to consider his claim [that] he was denied his Sixth Amendment right to counsel of his choice and should it find

the claim has arguable merit, appoint counsel to investigate and supplement his petition."

¶ 20 The People argue that Benhmida's counsel of choice claim was not viable because his allegations were conclusory, undeveloped, and not supported by legal authorities. The People also note that the claim fails on its merits because when Benhmida was arrested, he was unhoused, unemployed, and indigent, and the motion failed to explain how he would have been able to hire or otherwise engage private counsel to represent him.

¶ 21 We agree with the People that Benhmida's claim fails for multiple reasons. Benhmida did not identify an attorney whom he had arranged to retain or allege facts explaining how he would have been able to engage private counsel. Moreover, he fails to identify any part of the record where he informed the district court that he desired to hire private counsel to replace his public defender. In the absence of any allegations supporting these basic propositions, Benhmida's claim fails.

¶ 22 Furthermore, in his postconviction motion, and on appeal, Benhmida makes only vague assertions, unsupported by specific factual allegations or legal authorities. The claim was — at best —

10

conclusory and undeveloped. *Osorio*, 170 P.3d at 799. We therefore conclude that the postconviction court did not err by failing to expressly address it. *Ardolino*, 69 P.3d at 77; *People v. Taylor*, 2018 COA 175, ¶ 8 ("[W]e may affirm a [postconviction] court's ruling for any reason supported by the record.").

¶ 23 Because Benhmida failed to state a viable, substantive basis for postconviction relief, we need not address his arguments that the belated filing was nonetheless timely because of excusable neglect or justifiable excuse.

### III. Disposition

¶ 24 The postconviction court's order is affirmed.

JUDGE GROVE concurs.

JUDGE J. JONES specially concurs.

JUDGE J. JONES, specially concurring.

¶ 25 I agree with the result reached by the majority — affirmance of the postconviction court's order denying defendant's Crim. P. 35(c) motion without a hearing. But I would affirm on the bases that the motion was untimely and the claims were insufficiently developed. I say this without intending to imply that I disagree with any of the majority's rationale.